UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

**KELLIE M. TUCKER, as Personal**
**Representative of the Estate of JOHN TUCKER,**
**deceased,**

    **Plaintiff,**                                      **CASE NO.:**

v.

**UNITED STATES OF AMERICA,**

    **Defendant.**

_____/

## COMPLAINT

Plaintiff, KELLIE M. TUCKER, as Personal Representative of the Estate of JOHN TUCKER, deceased, hereby sues Defendant United States of America and alleges:

1. This is an action for damages in excess of $75,000.00, exclusive of interest and costs.

2. The United States of America (hereinafter "Defendant") is the Defendant in this action pursuant to the Federal Tort Claims Act, 28 U.S.C. §1346(b) and §2671. *et. seq.*.

3. At all times material, Plaintiff Kellie Tucker was married to and living with John Tucker as residents of Jacksonville, Duval County, Florida. This Court has jurisdiction over this cause and venue is proper in the Middle District of Florida, Jacksonville Division, because all of the acts and circumstances giving rise to this cause of action occurred in Jacksonville, Duval County, Florida.

4. Kellie M. Tucker and John Tucker are the natural parents of John H. Tucker, Jr. and S.M. Tucker, a minor.

5. Kellie M. Tucker is the Personal Representative of the Estate of John Tucker, deceased, and currently resides in Huntersville, NC.

6. The following are survivors and beneficiaries of a claim for the wrongful death of John Tucker:

   a) Kellie M. Tucker, wife;

   b) John H. Tucker, Jr., son;

   c) S.M. Tucker, a minor daughter; and

   d) The Estate of John Tucker.

7. At all times material, Naval Hospital Jacksonville ("Naval Hospital"), is a military hospital located and operating in Jacksonville, Florida, which is owned and operated by Defendant United States of America.

8. At all times material, Naval Hospital employed medical staff that treated John Tucker, including but not limited to Jason Michael Durbin, D.O. ("Dr. Durbin").

9. At all times material, Naval Hospital medical staff, including but not limited to Dr. Durbin, were acting within the course and scope of their employment with Defendant United States of America when they provided medical care and treatment to John Tucker.

10. At all times material, Jason Michael Durbin, D.O. was acting within his course and scope of his employment with Defendant United States of America when he provided medical care and treatment to John Tucker.

11. On or about May 14, 2019, administrative tort claim forms were filed with the Office of the Judge Advocate General, Tort Claims Unit Norfolk, on behalf of Kellie Tucker, the Estate of John H. Tucker, John H. Tucker, Jr., and S.M. Tucker. Defendant United States of America denied the administrative tort claim by letter dated November 12, 2019.

12. All the conditions precedent for bringing this lawsuit have occurred or have been waived.

**GENERAL ALLEGATIONS**

Plaintiffs incorporate and reallege paragraphs 1 through 12 above and further allege:

13. At all times material, Naval Hospital Jacksonville medical staff, including but not limited to Dr. Durbin, owed a duty to John Tucker to provide him with medical care

and treatment which met the appropriate standard of care in treating patients such as John Tucker. Further, Naval Hospital Jacksonville medical staff owed a duty to John Tucker to exercise that degree of knowledge or skill possessed, or the degree of care ordinarily exercised under the circumstances of his treatment, by health care providers in the field or specialty in which Naval Hospital Jacksonville medical staff were practicing.

14. At all times material, Naval Hospital Jacksonville medical staff including but not limited to Dr. Durbin, breached the duty owed to John Tucker to provide him with medical care and treatment which met the appropriate standard of care in treating patients such as John Tucker and to exercise that degree of knowledge or skill possessed, or the degree of care ordinarily exercised under the circumstances of his treatment, by health care providers in the field or specialty in which Naval Hospital Jacksonville medical staff were practicing.

15. On or about December 15, 2017, Mr. Tucker was diagnosed with adenocarcinoma of his prostate gland.

16. On or about March 26, 2018, Mr. Tucker presented to Naval Hospital Jacksonville for a follow-up evaluation by Dr. Durbin to discuss treatment options for his recently diagnosed, low risk, prostate cancer.

17. On or about March 26, 2018, Dr. Durbin recommended robotic-assisted radical prostatectomy and bilateral nerve spare ("RARP/BNS").

18. On or about March 26, 2018, Naval Hospital did not have an appropriate surgical robot to perform the RARP/BNS procedure at Naval Hospital.

19. On or about March 26, 2018, Naval Hospital coordinated and scheduled Dr. Durbin to perform John Tucker's RARP/BNS procedure at St. Vincent's Medical Center Southside ("St. Vincent's").

20. On or about April 10, 2018, John Tucker presented to St. Vincent's for performance of RARP/BNS procedure by Dr. Durbin.

21. Dr. Durbin's Operative Procedure note states "known risks of the procedure were discussed with the patient, to include bleeding, infection, damage to surrounding structures to include bowel, bladder, ureters, and rectum..."

22. Dr. Durbin's Operative Procedure note states that Mr. Tucker tolerated the procedure well and there were no complications or injuries.

23. On April 10, 2018 at approximately 1502, Jennifer Foushee Conde, M.D. ("Dr. Conde") evaluated Mr. Tucker because he was unable to maintain oxygen levels above 93 while on oxygen. Dr. Conde noted Mr. Tucker had bilateral crackles to the apices of his lungs and suspected negative pressure pulmonary edema.

24. On April 10, 2018 and April 11, 2018, Mr. Tucker exhibited severe pain in his abdomen and was receiving morphine and Percocet for pain.

25. As a result of these continuing symptoms, on April 11, 2018, Dr. Durbin was concerned about a urine leak and ordered a CT of Mr. Tucker's abdomen and pelvis without contrast, with the specific indication "rule out urine leak."

26. On April 11, 2018 at approximately 1605, a CT abdomen and pelvis without contrast showed a "[m]oderate amount of free fluid in the abdomen and pelvis and extending throughout the right transversus abdominis muscle."

27. The reading radiologist, James Wesley Carter, M.D. ("Dr. Carter"), cognizant of Dr. Durbin's concern and indication, specifically stated "given the concern for a urine leak, recommend CT cystogram."

28. On April 11, 2018 at approximately 1820, Zachary Edward Brown, M.D. ("Dr. Brown") performed the CT pelvis/cystogram with and without contrast for comparison to the CT taken earlier in the day. Dr. Brown found no evidence of urinary *bladder* leak, but moderate free fluid within the pelvis. Dr. Brown also noted a right abdominal wall musculature hematoma, increased from prior study.

4

29. On April 12, 2018 at approximately 1443, a nephrology consult by Gaurav Tandon, M.D. ("Dr. Tandon") noted the CT urogram did not show any **bladder** leak. Dr. Tandon further noted Mr. Tucker was a "little distended" and he had blood tinged urine in his Foley.

30. Despite his specific concern for a urine leak, and despite the failure to identify the actual source of the urine leak via CT abdomen/pelvis and CT cystogram, Dr. Durbin failed to continue to investigate and address the actual source of the urine leak, including a check of Mr. Tucker's ureters.

31. On April 12, 2018 and continuing to Mr. Tucker's discharge on April 15, 2018, Mr. Tucker continued to exhibit a distended abdomen, abdominal pain, no flatus or bowel movement, free fluid in his abdomen, and blood-tinged urine in his Foley catheter.

32. On April 13, 2018, Mr. Tucker developed shaking chills and fevers and tested positive for urinary tract infection. Additionally, evaluation of Mr. Tucker on April 13, 2018 by Sebastian Robert Stanciu, M.D. ("Dr. Stanciu") revealed "Pertinent positives include severe abdominal distention, pain, nausea, and abdominal pain" and Dr. Stanciu's assessment included renal failure.

33. On April 15, 2018, Mr. Tucker was discharged to his home with his abdomen a "little distended" and an elevated white blood count of 16.6.

34. On April 16, 2018, Dr. Durbin followed up with Mr. Tucker by telephone call. Mr. Tucker reported he still had not passed flatus and did feel like he needed to. Dr. Durbin recommended Bisacodyl and noted he would see Mr. Tucker on Wednesday (two days later) in follow up.

35. On April 16, 2018 at approximately 2133, Mr. Tucker presented to the emergency department at Naval Hospital Jacksonville for complaints of worsening abdominal pain, shortness of breath, fatigue, and malaise.

36. On April 16, 2018, CT of Mr. Tucker's abdomen and pelvis showed "a large fluid collection within the deep pelvis, measuring 12 x 11 x 9 cm." The impression of the CT abdomen/pelvis was "1. Circumscribed fluid collection within the deep pelvis, emanating from

the surgical bed from the patient's recent prostatectomy … given the increasing white blood cell count and the inflammatory changes within the mesentery and omentum, this is concerning for either an infected seroma or early developing abscess."

37.     On April 17, 2018 at approximately 0834, Mr. Tucker was admitted to NAS Jax by Dr. Durbin with the primary diagnosis of peritoneal abscess. Dr. Durbin ordered CTs of Mr. Tucker's chest, abdomen, and pelvis and "noted 12 cm fluid collection concerning for possible seroma vs pelvic abscess w/ associated ileus and no free air noted or PE."

38.     On April 17, 2018 at approximately 0836, Mr. Tucker's white blood count was 22.6.

39.     On April 17, 2018, Dr. Durbin noted opacification of pelvic fluid collection on plain films that was concerning for possible urine leak from possible ureteral injury. Dr. Durbin recommended a stat CT urogram to rule out distal ureteral injury.

40.     On April 17, 2018 at approximately 1114, a STAT CT urogram was ordered for Mr. Tucker to rule out distal ureteral injury versus extravasation; however, results of the CT urogram confirmed Mr. Tucker had sustained a distal right ureteral injury with extravasation into a large pelvic urinoma and free fluid extension into the abdomen.

41.     On April 17, 2018, Mr. Tucker was transferred to St. Vincent's Medical Center Riverside from Naval Hospital Jacksonville for an interventional radiology procedure, specifically "CT-guided drainage of the urinoma and placement of a right ureteral stent and possibly a nephrostomy tube if needed."

42.     On April 18, 2018, Mr. Tucker underwent the recommended interventional radiology procedure, including successful placement of a right nephrostomy tube and successful urinoma aspiration; however, the attempted placement of a right ureteral stent was unsuccessful and Mr. Tucker was to have a stent placed by Dr. Durbin as an outpatient.

43.     On April 23, 2018, Mr. Tucker was discharged to his home with the right nephrostomy tube in place.

44. On April 25, 2018, Dr. Durbin "attempted R ureteral stent placement … in MOR. The R distal ureter had extravasation on the medial side & unable to pass a wire to place a stent." Dr. Durbin noted that he explained to Mr. and Mrs. Tucker that Mr. Tucker's urine was diverted to the right nephrostomy and "we need to let his R ureter heal in order to possibly place a stent or do robotic assist reimplantation of R ureter."

45. From April 25, 2018 to the time of his death on July 31, 2018, Mr. Tucker presented numerous times for multiple bouts of sepsis and other medical complications related to his right ureter laceration, including but not limited to renal failure, exacerbation of cardiomyopathy, and congestive heart failure.

46. On August 7, 2018, autopsy performed by Aurelian Nicolaescu, M.D. ("Dr. Nicolaescu") showed approximately 500 ml of brown, clear fluid in the right chest cavity, 400 ml of brown, clear fluid in the left chest cavity, and 1200 ml of clear, yellow fluid in the abdominal cavity.

47. Dr. Nicolaescu reported Mr. Tucker's cause of death was complications of right ureter injury, post robotic assisted radical prostatectomy, for prostate cancer.

48. On July 31, 2018, Mr. Tucker died as a result of complications of right ureter injury.

### COUNT I
### NEGLIGENCE OF DEFENDANT UNITED STATES OF AMERICA
**(Medical Staff Negligence)**

49. On April 10, 2018, Mr. Tucker presented to St.Vincent's Medical Center Southside to undergo a robotic-assisted radical prostectomy and bilateral nerve spare by Dr. Durbin of Naval Hospital Jacksonville

50. Following the procedure, Mr. Tucker exhibited severe abdominal pain and CT scans showed he had free fluid in his abdomen which was concerning for a urinary leak.

51. On April 15, 2018, Mr. Tucker was discharged to his home by Dr. Durbin despite still having abdominal distention, free fluid in his abdomen, inability to pass flatus or have a bowel movement, and elevated white blood count.

52. Despite specific concern for a urine leak, and despite specific imaging studies that failed to identify the source of the urine leak, Dr. Durbin failed to continue efforts to identify and address the source of Mr. Tucker's urine leak.

53. Despite documenting in his Operative Note that he specifically discussed with Mr. Tucker that a ureter injury was a known risk of his procedure, Dr. Durbin failed to investigate Mr. Tucker's ureters as a source of the urine leak. As a result, a laceration of Mr. Tucker's ureter was not discovered until April 17, 2018, a full seven days post-surgery.

54. On April 16, 2018, Mr. Tucker presented to Naval Hospital Jacksonville with complaints of worsening abdominal pain, shortness of breath, fatigue, and malaise and was admitted by Dr. Durbin with the primary diagnosis of peritoneal abscess.

55. On April 17, 2018, a stat CT urogram confirmed Mr. Tucker had sustained a right distal ureteral injury and Mr. Tucker was transferred to St. Vincent's Medical Center Riverside for further medical care and treatment, including but not limited to "CT-guided drainage of the urinoma and placement of a right ureteral stent and possibly a nephrostomy tube if needed."

56. On April 17, 2018, Mr. Tucker was diagnosed with sepsis with recent urological procedure with possible underlying infection at St. Vincent's Medical Center Riverside.

57. From April 10, 2018 until his death on July 31, 2018, Mr. Tucker continued to experience severe pain and discomfort as a result of his right ureteral injury, including but not limited to multiple bouts of sepsis, renal failure, exacerbation of cardiomyopathy, and congestive heart failure.

58. On July 31, 2018, Mr. Tucker died as a result of complications of his right ureteral injury, including but not limited to sepsis, exacerbation of cardiomyopathy, and congestive heart failure.

59. Defendant, by and through its medical staff at Naval Hospital Jacksonville, including but not limited to Dr. Durbin, breached its duty owed to John Tucker, and was negligent as follows:

   a) Failing to provide proper and appropriate surgical care and treatment to John Tucker;

   b) Failing to provide timely and proper medical management of John Tucker's worsening signs and symptoms of ureteral injury and sepsis;

   c) Failing to ensure timely and proper post-procedure monitoring of John Tucker;

   d) Failing to recognize signs and symptoms of ureteral laceration in John Tucker;

   e) Failing to timely and properly diagnose Mr. Tucker's right ureteral laceration;

   f) Failing to timely and properly order appropriate diagnostic services for Mr. Tucker, including but not limited to, a CT urogram;

   g) Failing to recognize the urgency of John Tucker's worsening condition;

   h) Failing to provide proper and timely medical intervention(s) to John Tucker, including but not limited to, timely stenting and/or repair of the right ureter; and

   i) in such other ways as discovery in this case may reveal.

60. As a direct and proximate result of the negligence of Defendant United States of America, by and through its medical staff, including but not limited to Jason Michael Durbin, D.O., John Tucker died on July 31, 2018.

61. As a further direct and proximate result of the negligence Defendant United States of America, by and through its medical staff, including but not limited to Jason Michael Durbin, D.O., Plaintiff Kellie M. Tucker, has suffered the loss of her husband, including the loss of services, support, companionship, comfort, society, love, affection, solace, and loss of the enjoyment of life. She has experienced great mental pain and suffering in the past and will continue to experience great mental pain and suffering in the future.

62. As a further direct and proximate result of the negligence Defendant United States of America, by and through its medical staff, including but not limited to Jason Michael Durbin, D.O., Plaintiff John H. Tucker, Jr. has suffered the loss of his father's services, support, companionship, comfort, society, love, affection, and solace, and will be so deprived of his father's services, support, companionship, comfort, society, love, affection, and solace in the future. He has experienced great mental pain and suffering from the date of John Tucker's death and will continue to experience great mental pain and suffering in the future.

63. As a further direct and proximate result of the negligence Defendant United States of America, by and through its medical staff, including but not limited to Jason Michael Durbin, D.O., Plaintiff S.M, a minor, has suffered the loss of her father's services, support, companionship, comfort, society, love, affection, and solace, and will be so deprived of her father's services, support, companionship, comfort, society, love, affection, and solace in the future. She has experienced great mental pain and suffering from the date of John Tucker's death and will continue to experience great mental pain and suffering in the future.

64. As a further direct and proximate result of the negligence Defendant United States of America, by and through its medical staff, including but not limited to Jason Michael Durbin, D.O., the Estate of John Tucker has experienced a loss of income, loss of net accumulations and has incurred medical and funeral expenses.

**CERTIFICATE OF GOOD FAITH**

The undersigned attorney certifies that a reasonable investigation has been made as permitted by the circumstances to determine that grounds exist for a good faith belief that there has been negligence in the care and treatment of John Tucker. The investigation gave rise to a good faith belief that grounds exist for the subject action against Defendant.

Dated this 10th day of April, 2020.

CRONIN & MAXWELL, PL

*/s/ Sean B. Cronin*

Sean B. Cronin, Esquire
Florida Bar No. 146447
Michelle L. Davis, Esquire
Florida Bar No. 67913
4250 Lakeside Dr., Ste. 204
Jacksonville, Florida 32210
(904) 388-9555
(904) 388-0792 (Facsimile)
sean@croninmaxwell.com
mdavis@croninimaxwell.com
service-cm@croninmaxwell.com
Attorneys for Plaintiff